May it please the court, the county's long-standing practice of opening its sessions with an invocation fits squarely with the centuries-old tradition recognized by the Supreme Court in Marsh and Town of Greece. Whatever the precise meets and bounds of that tradition under the Constitution, this case does not require this court to engage in difficult line drawing because the Supreme Court and this court have established the three principles that we believe require judgment in the county's favor in this case. First, while this case was originally brought as a challenge to the sectarian content of the prayers, the Supreme Court's intervening decision in Town of Greece conclusively forecloses that argument by holding that such prayers are well within the mainstream of the tradition recognized in Marsh, repudiating contrary dicta in County of Allegheny, and overruling... The counsel for the opposition and the district court say that the difference in this case is that the legislators themselves are the prayer givers. That's the distinction that they response to. Tell us why that's a distinction without a difference. Yes, Your Honor, and that leads me to the second principle that this court established in Joiner, in Turner, and in Simpson, which is that for constitutional purposes the identity of the prayer giver is of no moment. Whether the prayer giver is a town of Greece, did the Supreme Court say that these have to be resolved on a case-by-case basis, or did they lay down a flat rule that any kind of prayer, not withstanding the nature of the prayer or the identity of the prayer giver, is okay? Your Honor, I think that the answer to that question is set forth in Part 2A of Justice Kennedy's majority opinion for the court. I think the court certainly made clear that it is a fact-sensitive analysis. That's what I was getting to. It's a fact-sensitive analysis, so no, we need to look at the facts. Certainly, Your Honor. I think what town of Greece... Well, it's fact-sensitive within certain pretty hard rules, though. Isn't that correct? That's correct, Your Honor, and I think what Justice Kennedy's majority opinion for the court looked at is... Doesn't the town of Greece establish that sectarian prayers are perfectly fine, perfectly fine, because they are, not because of some historical practice necessarily, but just because they are, and there are certain distinctions and caveats, correct? That's certainly true. And what are those caveats over sectarian prayer? Well, I would say that the caveats listed really don't go to the sectarian nature of the prayer. I think the language that Justice Kennedy used was prayers that do not preach conversion or threaten damnation. That those were sort of the limits placed. We have to be wary and leery of prayers that do that, not the ones that don't do that. And he also said over time. Yes, a pattern or practice over time whereby the prayer opportunity is abused. These two attempts to proselytize, damn, coerce, correct? Is there evidence of any of that in this case? No, Your Honor. Over time that the prayer givers are using prayers to try to proselytize, coerce. Is there any evidence of that in this case? No, Your Honor. And in fact, I think it's helpful to look at the prayers, two of which were actually set out by Justice Kennedy. Now, let's move on to the next question. Yes, Your Honor. Go back to Judge Agee's question. Of course, it's always fact. I mean, it's always you have to look at the facts, but you look at the facts within the parameters. In town of Greece, they have some pretty hard parameters, don't they? Yes, that's correct, Your Honor. Now, it's almost a presumption. Maybe it's more than that, don't you think? I think that's correct, Your Honor. Now, what about Judge Agee's question about who's giving the prayer? Because it looks to me, I agree with his reading, that it looks like the argument has shifted now away from sectarian prayers, I suspect because the other side realizes that's a difficult challenge for them, to who gives the prayer. Now, does that matter? No, Your Honor. I think it is of no constitutional moment as this court in Joyner. And why is that so? It is so because either way, it is the government speaking. Whether it is a chaplain selected and paid for who serves as an officer of the legislature, as in Marsh, whether it is a volunteer clergy... So you see it either way, either if it's the legislator speaking or if it's somebody chosen by the legislator, that becomes basically the agent of the legislator, hence agent of the government. Whoever selected to give the prayer. I think that's correct, Your Honor. This is simply of no constitutional moment. Who is delivering the prayer? It is the government. What percentage of these prayers are, the prayers in the record, are sectarian? In the sense that there's a reference to Christianity? I believe 100% of the prayers are sectarian to the extent there's reference to a Christian term. 100%? Does that make a difference after Town of Priests? No, Your Honor, I don't think it does. I think the statistic in Town of Priests, if I'm remembering correctly, was something like 87%, perhaps higher. So I don't think that matters. Why isn't that sort of discriminatory then on what the content of the prayer is? Well, Your Honor, I don't think it's discriminatory because in our case, the legislators delivered the prayers on a rotating basis. But it's only Christian prayers being given. I'm asking, why isn't it discriminatory and violative of some constitutional or legal position because all the prayers are to the Christian deity? I believe that question was answered in Town of Priests. Why don't you answer it? Certainly. I think it's not because what matters is the government chose that universe of prayer givers without any discrimination. There is no allegation, much less evidence. The government didn't choose anybody here other than by policy. Who chose who gave the prayers there? The government chose to rotate the prayers among the prayer givers, just like the government in Marsh chose to hire a chaplain, just like the government in Town of Greece chose to rotate among clergy. That's not the answer I expected from you, quite frankly. I thought you would say it's not discriminatory because the choice of what kind of prayer is given, that's decided by the people who elect the representatives who get to vote. Yes, Your Honor. That is absolutely true. He said yes, Your Honor, now. That's not how you answer the question. Well, forgive me, Your Honor. I was answering in terms of, I think, the more direct link in terms of the government choosing the practice and this court's instruction in Joyner and Simpson and Turner and other cases that courts, obviously the police, as you say, police the line that don't interfere. Yes, Your Honor. What troubles me about this case is the combination. Have we ever had a combination of legislative prayer plus an undeviating pattern over time where every single one of the prayers makes a direct reference to a particular faith? I mean, the prayers are beautiful and they're eloquent. The problem is the setting, which is the most basic unit of municipal government, which affects the lives of all citizens, not just the members of one faith. And it's this combination. Maybe there are cases out there, but the combination of where you have legislative prayer given. I don't think legislative... I think legislative prayer is a wonderful tradition in our country. It can be non-denominational or it can be sectional with variations or sectarian with variations. What is concerning to me is the combination of the legislative prayer plus an unvarying pattern of reference to one faith and one faith only. Has that combination been upheld by other courts or are we going to be the first? Well, Your Honor, I think... Where this particular set of variables and ingredients was involved. And I think, as Your Honor has said, the inquiry is a fact-sensitive one. Why don't you answer his question? He asked you a very specific question. I'm not aware of a case in which these precise circumstances were presented. So we'd be really out there? No, Your Honor, I don't think so. But if you can't think of a case? Well, Your Honor, I think... Let me take a step backwards. Does that hurt your argument that we'd be the first case to say this? No, Your Honor, because I think the elements in this case fit well within the tradition. The elements of legislator-led prayer, exclusively legislator-led prayer, as our amici, the states, proffer, that's well within the tradition. And to the concerns expressed about it's only one group that gets to say the prayer, a certain kind of prayer, had the Supreme Court, have we already discussed, had the Supreme Court factored that in to their Town of Greece case? Yes, Your Honor. How did they do that? They factored that in by, as Your Honor, I think, began by asking me of looking at does the prayer preach conversion or threaten damnation? And if it does not, it is well within the tradition. Whoever gives the prayer, or whatever the content... So that would suggest, wouldn't it, that the concern of having only one group pray under a completely accepted historical practice and non-constitutionally violative system would be if that religious sectarian group took advantage of that position to try to not express religion, but to try to effect, E-F, effect religion. Isn't that what the Supreme Court said? That's precisely correct. Because, of course, in Marsh, you had a Presbyterian chaplain who was the sole prayer giver for a period of 16 years. And longer than that, actually, that was where litigation began. Some of those were non-denominational prayers? After the litigation began. The universe of prayer... In fact, the dicta in the County of Allegheny, that refers to that. The Reverend Palmer actually filed an amicus brief in Marsh in which he clarified that his prayers, in terms of the body of the prayers that were at issue in that litigation, certainly included prayer that would be considered sectarian. And that he did not... Yes, Your Honor. The majority of the town agrees to take the dicta in Allegheny out of play. Yes, Your Honor, that's correct. Tell me... I finished your answer to the last question. Yes, Your Honor. Who's the audience for these legislative prayers? The audience for these prayers are the legislators themselves. The prayer is directed to the legislators. And I think, if anything, Your Honor, to the extent that is of concern, our case, the facts of our case, are even easier than in town of Greece, where the volunteer clergy would actually come in and face, much as I am with you now, would face the audience with the board behind him or her and deliver the invocation. Here, it is a legislator himself or herself within the legislative body delivering the invocation prayer. Does the intended audience make a difference in the analysis? The Supreme Court has said it does. The Supreme Court has said that one criteria of legislative prayer, the tradition, is that it is directed to the legislators themselves. And that's the case here. In fact, in this case, that is the audience. Members from the public who were there, they never had to stand. They could leave, come in, whenever they wanted to. That's correct, Your Honor. Well, if they're sitting in the municipal council chamber or the board of supervisors' chamber, wouldn't they be an audience? I mean, certainly an audience, the word audience begins with A-U-D, which means to hear. They certainly heard. Certainly. But wouldn't they be an audience taking the word on its face? Yes, Your Honor, I think they certainly would be an audience, just like in town of Greece was the audience, and just like in March there were the spectators in the gallery. So we don't dispute they're an audience. I think that the critical issue for constitutional purposes is where the prayer is directed. It's directed to the legislators. No different here, and in fact, I think the facts of our case are even more clear. Why would it matter if the audience was the assemblage? Why would that matter to your argument? It would not matter. I'm just acknowledging that, yes, there is an audience, but that does not matter from a constitutional perspective, Your Honor. That's correct. Other than I think would it be perhaps if the prayer sort of went something like this, and we hope that everyone here and everyone present will understand you're the only way to truth and life and all that. That could be seen under the Supreme Court criteria for coercion or proselytizing. Is that correct? Is that how that's taken into account? May I answer the question? Of course you may. Thank you, Your Honor. I do, and in fact, that goes back to the point about the pattern or practice over time, that you would have to see a pattern or practice over time of that sort to take it out of the tradition. Well, you have some time that you've reserved for rebuttal. We appreciate your argument, and we'll hear you on rebuttal. Thank you, Your Honor. Now let's hear from you, Mr. Brooke. Good morning, Your Honors. May it please the court, Chris Brooke, for the plaintiff's appellees in this case. While remaining a fact-sensitive inquiry, Town of Greece gives examples of impermissibly coercive prayer practices. Rowan County time and again exemplifies the practices that Town of Greece warned against. What's the best example in the record of coercion from a prayer of proselytizing, in your opinion? So prayers that proselytize... Yeah, I'm saying, you know, we know what it means. I'm asking what's the best example from a prayer in the record that you see the best example of proselytizing. On December 3, 2012, Your Honor, Commissioner Ford said, I pray that the citizens of Rowan County will love you, Lord, and that they will put you first. In Jesus' name, amen. On March 7 of 2011, Your Honor, this was Commissioner Barber's prayer, and I'm exerting these prayers. These are not the entire prayers. Holy Spirit, open our hearts to Christ's teachings and enable us to spread His message amongst the people we know and love through the applying of the sacred words in everyday life. In Jesus' name, we pray. Again, exerting from a prayer from November 16. You don't think in Jesus' name we pray is relevant. You think it is open our hearts. You think that language is correct. That's proselytizing, Your Honor, and it's exactly along the lines... Not using Jesus' name. You don't think that. No. You added that to your quote. You mean the open their hearts. I'm making plain by inclusion in that excerpt who you should be opening your heart to in the suggestion proffered by Commissioner Barber opening the meeting on that occasion. I'll give you another example, Your Honor, and this is by no means all of the examples that are in the record that are before you. So are they proselytizing the other legislators? They have made plain that the audience for these prayers is not only the elected officials, but also the Rowan County citizens who are in attendance. There is unequivocal information in the record about who these prayers are directed at in the audience for these prayers. So it makes the prayer acceptable if the legislator giving the prayer said this is a prayer only intended for the legislators and it's not intended to cover anybody else anywhere in the audience or in our jurisdiction? If the prayer was plainly internal, as you have suggested, Your Honor, and if the prayer featured no... Why don't you just answer his question? Would that be acceptable? I wanted to make sure that I understood. Based on my understanding of his question, yes, Your Honor, I think that that would be acceptable. It's also quite distinguishable from the facts. You wouldn't care then if the practice was given by the members of the council, all of whom were Christian, and there were Christian prayers, if they were more explicit that they were only talking about guidance for them as they went about business for the county. That wouldn't concern you at all. That would diminish immensely the course of pressure. Would you think that was unconstitutional? Can you repeat the... I want to make sure that I fully understand what you're asking, Your Honor. I don't mean to be disrespectful. Straightforward and simple. Yes. Members of the council, in their prayers, made it clear that we are praying for your guidance, for us as a council to be effective for the people that you lead us to make the right decisions. Any challenge to that? Your Honor, as long as the contents of the prayers do not over a pattern of time, proselytize advance... They say that same thing every time they pray. Yes, if there's no record of pattern of proselytizing, damning... Well, you've heard what the evidence is and what the record is. I've just created it for you. No, no, let me just get an answer. I just want to understand this argument. That would not be a concern to you then? There would be no constitutional challenge on the sectarian nature of the prayers? That is correct, Your Honor, because what you have described, Your Honor... No, no, we know what it's about. But I want to make sure that it's plain why these facts are different than what... I know what the facts are in this case. I just asked you so I can understand. Then you are not arguing that only legislators are allowed to give prayers, and you are not arguing that it's impermissible that there are only Christian prayers being given. Correct? Correct, Your Honor. You are concerned because you think that's what Town of Greece means. The controlling opinion from Town of Greece says that prayers that call on public participation and are for the benefit of the public are coercive and cross the line of what is permissible. I didn't ask you that. You answered the question I didn't ask you. I said, you said after Town of Greece you don't challenge the fact that the legislators give prayers and that they give prayers, all of them Christian prayers, as long as those prayers don't cross the line and proselytize. Proselytize, advance, disparage... Yes, Your Honor. Yes, Your Honor. So your argument in any way based on the fact that all of these prayers are Christian sectarian, correct? No, that they are. You may argue about have they overextended, but due to the fact they're all Christian prayers, that's not a basis for your attack in this case. No, Your Honor. It is based on the nature of the prayers. It is based on the nature of the prayer practice itself as well. Yes, Your Honor. I wanted to ask a couple of questions here. First of all, you listed two proselytizing prayers in your response. Are there any more illustrations you wish to give? Yes, Your Honor. Because I... So on the other example, there are two more examples that I had written out. There are more from the record, Your Honor, but I think these are particularly instructive as to what is transpiring here. On November 16, 2009, this was Commissioner Hall stated, and this is again an excerpt of the prayer in question. Please pray with me. Heavenly Father, all too often we have not recognized the mission you would have us to do, to transform our small portion of the world through your will. We have trusted our wisdom instead of the wisdom of the Holy Spirit. May we always seek your will above our wills. May we always pray for your strength and aid in all that we do. For in our hearts, minds, and wills, completely to you that we may serve you at all times. In Jesus' name. You had another example? There was a comment when... What's proselytizing about that prayer? To transform our small portion of the world through your will. Your Honor. When legislators are praying for guidance for the direction of their legislative duties, I'm not understanding what the proselytizing element is here. First, Your Honor, the audience for please pray with me, as Judge Wilkinson indicated previously, is in part those Roland County residents who are in attendance at these meetings. This is not a strictly internal practice. Further, the commissioners themselves have stated very plainly that this is not a purely internal practice. Commissioner Barber stating that the prayer practice has been a tradition for the board as well as for our citizens. Commissioner Mitchell... Shouldn't everybody in Greece now all hear the prayers? I mean, they can't bring a cone of salads down over top of the prayer table. Yes, Your Honor, but there were no statements of purpose that these prayers were plainly for... What was the other example you were going to give? You had a fourth one? In regards to the proselytizing prayer, Your Honor, this was Commissioner Ford speaking about this in public and about this prayer practice, and he said, I am not perfect, so I need all the help I can get, and asking for guidance for my decisions from Jesus is the best that I and Rowan County can ever hope for. That wasn't a prayer you said? That was a comment to the media about this prayer practice. Right, but that wasn't a prayer that we were discussing here. You just think that may illuminate it, but that's not a prayer. The reasonable man that Justice Kennedy... Can I ask you another question? I said, this isn't my question. Sure. It's not a prayer, correct? That's correct, Your Honor. But you think it may illuminate the prayer practice? Yes, very much, Your Honor. Were the previous three examples you gave from prayers? Yes, they were, Your Honor. Okay, but that one wasn't. That one was a comment. So we were talking about public participation, and what do you contend is the public participation here? The request for public participation from the elected officials? Yes. That comes in a number of different forms. There's first, the chair of the county commission calls on those in attendance to stand for the prayer and the pledge. Then, subsequently, another commissioner delivers the prayer, but before delivering the prayer directs those in attendance to join him in prayer. How does he direct? Please pray with me. Let's pray together. Let us pray. Why is that a direction? Direction implies there's some sort of a command there as opposed to a request. Direction, the words that the town of Greece decision utilizes are direction, a variance on directs, directions, asks, requests. This court has also said that directions include invitations. In the Simpson case. That's just a request to be treated, to be included if you want to be, because if he said, stand if you agree with me, everybody else, you stay seated, he would be in here claiming it's not fair. He needs to ask everybody to stand. You can't possibly believe that's your strongest suit that a commissioner says, please pray with me or please stand. You don't think that. Let me give you another example, Your Honor, because there are other examples. Before you leave that, what are they supposed to do? If you agree that legislative prayer is okay, do they just stand up, say the prayer, and they don't make any comment about including whoever's in the room or whoever's on the dais with them? What are they supposed to do? There are myriad ways that they can comply with the Constitution subsequent to Greece. But, I mean, standing up, you know, when there's an invocation, when the court prior here or the courtroom deputy here says all rise, and normally people are asked to rise at the very beginning of a session. And, of course, they don't need to rise and everything, but if at the beginning of a session whatever invocation is offered, whether those are the judges who are going to enter the courtroom or whatever opening there is, it's a standard feature of American government in meetings to have people rise at the beginning, is it not? Yes, Your Honor, it is a standard feature. So why would that? I don't understand what's impermissible about it. Well, if all that was in the record, Your Honor, I think that we would have a very different case and not as strong a case. In this case, we don't just have please pray with me or let's pray together. We also have elected officials embracing the fact that this prayer opportunity is for the benefit of the public. They have unequivocally spoken. You were earlier in your opening, you were going to talk about whether this, how this is compatible with Town of Greece. Tell me how you think your position, how and why it conforms with this latest and obviously pivotal Supreme Court decision. Yes, the Town of Greece and Justice Kennedy's controlling opinion was very plain that elected officials at no point solicited similar religious gestures by the public, that elected officials at no point indicated prayers were for the public benefit, that it was exclusively an internal practice. And Justice Kennedy was clear about the legal significance of those distinct facts, stating that the coercion analysis would be different if board members directed the public to participate in the prayers. And again, that harmonizes with the Fourth Circuit's case law on point that precedes Greece. I thought you had just conceded that your point on direction, simply asking people to stand and join with you, was not a cognizable consideration. I think it would be a very different case if all we had was please pray with me or let us pray. But what we have here is the elected officials explicitly and unequivocally embracing that this is a prayer practice that is for the benefit of the public. Their prayers on occasion proselytize and seek divine guidance for the public in attendance. Well, there's a big difference between proselytizing and seeking divine guidance. Certainly you're not going to claim after count of Greece that it's unconstitutional for a legislative prayer to seek divine guidance. To seek divine guidance for the audience and suggest to them what religious holdings and beliefs that they should have. You say after count of Greece in a legislative prayer, a request is made for divine guidance not only for the legislators but for whoever else may be there. That is an unconstitutional act. When you have indicated that that is for the benefit of the public and when you call on the public to participate, and these prayers... Let me ask you this. An hour and 15 minutes you walk up the hill, the Senate and the House convene and there are legislative prayers, and in the course of that they pray for the troops overseas. Is that an unconstitutional act after count of Greece? No, not after count of Greece. What's the difference with what you just said? Because in that case there has been no embracing of the prayer for the public's benefit and directing the public who is in attendance to participate. What about troops on leave were there as well? So you had 15 troops over there. Then it's unconstitutional? In that you have 15... Would that be, yes, unconstitutional or not? Troops are in the audience. And you just referenced the fact that there are troops in the audience? No, Your Honor. No, no. You said... Listen, don't change the hypothetical. The hypothetical is you offered prayer across the street and you say, and also bless and protect and lead our troops in Afghanistan. And there were 15 troops from Afghanistan on leave with their family in the audience. Is that an impermissible prayer? No, Your Honor. Why is that not under your view? Because that is... You're trying to influence the audience there to be led to believe that they should be led by the religion of the speaker? Your Honor, I think that that's qualitatively different than what is transpiring here where there is suggestion about what their religious beliefs should in fact be as opposed to a more... No, no, wait, no, wait, wait, wait. You said no in response to Judge Agee's question because they weren't in the audience. They were not the audience. And I've suggested that some of the audience, including the troops. Now I want your answer. So, and I'm not trying to be disrespectful, Your Honor. I'm trying to follow the hypotheticals, and there are a number of different fact patterns being bandied about, and I want to make sure that I understand. Listen, let me give it to you again. Yes, please. Correct me if I'm wrong, Judge Agee. The legislative prayer is we ask divine guidance, Father, on us and also ask you help lead and protect our troops in Afghanistan. And to that question of would that be improper constitutionally, you said no. I just changed the hypothetical because you said because of the audience. And I said, well, what if 15 troops from Afghanistan, our troops, were home on leave and were in the audience? Does that change your answer? Is that unconstitutional? Because now the people you're praying about are there to hear you pray. Does that change your view of constitutionality of the prayer? Your Honor, I don't believe it changes my view in regards to the constitutionality of the prayer. So the audience doesn't matter? The audience does matter. Well, then why does it matter in my hypothetical? Your Honor, I'm sorry, I'm not following the hypothetical that you're offering there. In this situation. It's very simple. Yes. You have a prayer given across the street. Yes. And he says help us do right and help our troops. Oh, Father, help our troops do right and bless them in Afghanistan. You said that was not a problem because the troops were not in the audience. Right. I'm suggesting that what if you take that same hypothetical and some of those troops are, in fact, in the audience. Does that change your constitutional view of the prayer? I think that that is constitutionally significant, Your Honor. I didn't say all that. Is it constitutional or not constitutional? I believe that that would be constitutional under the facts that you have provided. So the audience doesn't matter to you? The audience does matter. How many troops have to be there for the audience to matter? But there's not a call for them to participate in these prayers. There's not a suggestion about what their particular religious beliefs. Everyone, please rise and join with me in prayer. That's what they'll say. But in this case, there have been instances where it's much more. No, no, no, no, no. Just answer this question. Yes. I can tell from your discomfort you don't want to answer it. Why is that so? It leads me to think maybe I'm wrong. It leads me to think you're concerned about your constitutional approach to this question. I could be wrong. I'm telling you up front so you can answer the question for me. Right. Well, the audience is relevant to whether there's impermissible coercion. That's a very fine statement. As we've established, it's facts intensive, isn't it? Yes, Your Honor. I've given you the facts. Now, what's the answer? The answer is that I think that that has some constitutional problem. No, no, no. I'm asking. Maybe you don't want to answer it. I'm going to ask one more time, then we'll move on. If 20, 30, 40 troops are present for that prayer, does that make the prayer, if you repeated that two or three or six times, would that make it unconstitutional? No, Your Honor. I don't think that that in and of itself would make it unconstitutional. May I have a moment to conclude my argument, Your Honor? Sure. In this case, Rowan County seeks to move far beyond the four corners of Greece, seeks to move far beyond the four corners of the jurisprudence here in the Fourth Circuit Court of Appeals, and invites not only a reconsideration of the jurisprudence here in the Fourth Circuit Court of Appeals, but to move the assessment from Justice Kennedy's facts sensitive assessment, whether there's direction. What do you think is the most problematic feature of the county's practice here? The fact that elected officials adjudicating matters or directing Rowan County citizens to participate in prayers. I was going to ask that question. I don't want to say too much. In sectarian prayers or just, I'm going to come back to that. In sectarian prayers or just prayers generally? The fact that the prayers are sectarian is relevant. It is not determinative to the inquiry. When you have elected officials exhorting, as they did on March 5th, 2012, to saying in part, and please tell me, I know I'm over my time, Your Honor. You are, but let me ask you this question. Yes. It's the same question that I wanted to ask you. Because you do make another part of your argument. Your argument is you don't so much argue about the sectarian nature as being violative here, do you? You argue more, don't you, that it's who is giving the prayer. Yes, Your Honor. Isn't that correct? Yes, Your Honor. What is the difference between the legislators, the commissioners giving the prayer, and them picking someone to give the prayer? Because that is an adjudicator who is about to make a decision. So, in other words, if they say, we've decided that, pick somebody, Miss Smith right there, or Reverend Jones is going to give the same prayer we would have given every session, that doesn't concern you as much? Your Honor, the case law indicates that there is a distinction. But I'm saying that doesn't concern you as far as your challenge as much. I think that it's very different. No, Your Honor, it does not concern me as much. So that you're concerned that it's the principals themselves rather than the agent of a principal. Isn't that all government speech, though? It is all government speech, Your Honor. So it's not a distinction on government speech. What is the constitutional issue that concerns there? The constitutional issue is coercion, and Justice Kennedy is very clear. Because of the person who's making the prayer? Yes, it's much different. Not the nature of the prayer, but just the fact that the person is praying, that makes a difference. It does make a difference. It is relevant, though not. It's not just all of these things. It's a totality of the circumstances in inquiry. I mean, the difficulty I'm having is I think legislative prayer is an honorable tradition in this country. And I don't think that sectarian prayer is something that under the decisional law is forbidden. What is troubling to me is the combinations of legislative prayer plus every single prayer being an expression of a particular, in reference to a particular faith, plus the fact that some of the prayers appear to be exhortations to those in the room to seek guidance or to have their lives guided by particular sectarian principles. And it's the combination of those that's troubling to me. Not any one feature of it, which standing alone, except for the third, might be acceptable. But I ask the good lawyer for the other side, if there has ever been another case with this combination that courts have upheld. I'll ask you the same question. Is there another case out there with the combination of legislative prayer directed exclusively or with references exclusively to one faith, time after time, month after month, and interspersed on occasion with a call to have the lives of those within earshot of that prayer guided by this, by the principles of one particular faith? Is there any other case out there that's presented this combination of circumstances? No, Your Honor. There is no case that has presented the combination of circumstances where the public is called on to participate, where the prayer is for the benefit in part of the public, where the elected officials who are delivering these prayers, Your Honors. And so there's certainly been no fact pattern like this other than this case where any court has struck down the prayer. Correct. No, I would disagree, Your Honor. The Wynn case features a lot of similar facts to the current controversy, and the Fourth Circuit Court of Appeals held that in part because there was direction and invitation and praying for divine guidance for the audience that that was impermissible pursuant to the establishment clause. So you think that Wynn dictates the response in this case? Yes, Your Honor. I think that Wynn does dictate. Even at the town of Greece? Town of Greece clearly pans out and says that we focus on more than the sectarian context. And that's what I said. I said you eat acid. Yes, Your Honor. Even after town of Greece, it pans out to broader considerations beyond. All right. Let's hear from your opponent here. Let me ask Judge Shearer a question. Absolutely. I'm curious about the argument you make with regard to the legislator being the prayer. Marsh, clearly, as Greece describes Marsh prior to that, this sort of an inquiry on legislative prayer is seen in many respects as a historical inquiry. You've had legislative prayer read in some part by legislators since before the founding. It was certainly known to James Madison in the draft of the Constitution and the First Amendment. How can it be, in the course of that historical tradition, that you have in some places 200, 300 years of tradition, where you may have a legislator leading the prayer, that that is an unconstitutional factor? Justice Kennedy states repeatedly and distinguishes between clergy delivering the prayer and the analysis, coercion analysis, is different when elected officials deliver the prayer. Well, where does it say that? I mean, that the issue in that case dealt with the selected individuals from the town. I don't recall in town of Greece any discussion where the legislator him or herself leads the prayer. And that's correct, but they say that the analysis would be different if there was a solicitation of religious observance. But that doesn't have anything to do with who the prayer giver is. That goes to what the message might be. And it might be that there's no distinction of that because in the course of 200-plus years, it's a well-recognized tradition. In town of Greece, there was recognition that there were invitations by the clergy to participate in the prayer to the public in attendance. And Justice Kennedy said that the coercion analysis would be different if town board members directed the public to participate in the prayers. There's a clear recognition of the fact that elected officials delivering the prayers makes a constitutional difference. That goes to whether or not the town officials told them to participate when the chaplain of the day was going to make the invocation. I think you're going pretty far afield to say he was there referencing the legislators themselves. In that case, town of Greece references very similar examples of solicitation to what transpired here. It's taken for a given by Justice Kennedy that there was solicitation that occurred, that the same facts here, but a different prayer giver. There's simply not a prayer practice similar to the prayer practice of Rowan County  for those reasons we call upon the district court opinion to be affirmed by this panel. Hold on just one second. Do you have anything? No. Dennis, do you have anything? We thank you very much. And Ms. Harvey? Thank you, Your Honor. We deserve some time for rebuttal, so we'd be happy to hear from you. Yes, Your Honor. Two points, and maybe I can try to do a better job, Judge, of addressing your concerns. Why don't you just go ahead and do it instead of tell us what you want to do? In terms of your concern about this case somehow being sui generis, I think it's important to emphasize this sea change in the law that town of Greece affected recently. In other words, for years, this court and other courts, feeling bound by dicta in County of Allegheny, read the tradition to exclude sectarian prayer entirely. So I think that may be one reason that you don't see this combination, is precisely because for so many years, courts doing the best they could with dicta read that to be prohibited, and now town of Greece has made clear that it isn't. I think if you compare the facts, to the extent it's fact sensitive, compare the facts of town of Greece to this case, if anything, there is less cause for establishment clause concern here. I'd just like to read from one of the prayers in town of Greece, highlighted by Justice Kennedy. Lord God of all creation, we give you thanks and praise for your presence. We look with anticipation to the celebration of Holy Week and Easter. It is in the solemn events of next week that we find the very heart and center of our Christian faith. We acknowledge the saving sacrifice of Jesus Christ on the cross. We draw strength, vitality, and confidence from his resurrection at Easter. We pray for peace in the world and end of terrorism, violence, conflict, and war. And it goes on. So I think that and there are references throughout the prayers. All that just makes it sectarian. All that just makes it sectarian. Your Honor, I do think though it goes to the point about my friend's position in terms of the prayer somehow loses its character as legislative prayer when it goes beyond request for guidance. Well, let me ask you this. When you have every single individual in a legislative body or in a board of supervisors or whatever, invariably referencing the same faith. Does the legislature or do the supervisors become the embodiment of the state for establishment clause purposes? It's not present when you have another prayer giver because the concern here is to avoid a state establishment of religion. And that coexists with a long tradition of legislative prayer, most of which is inclusive and non-denominational. People are reaching out. But where you have the combination of the entire elective body of a municipality referencing one and only one faith time after time, for establishment clause purposes, does that become an embodiment of the state of the kind that the Constitution is especially sensitive to? No, Your Honor. I don't believe it does for the same reason that the Nebraska legislature's choice of a Presbyterian minister to deliver the prayers on a consistent basis for 16 years did. Were those sectarian prayers? Some of them were, yes, Your Honor. I think the point Town of Grease makes is as long as there's no, and this is just directly to your point, as long as there's no suggestion of some sort of impermissible purpose or motive, and there's no suggestion or evidence of that here, the output is not constitutionally momentous. And not only you don't think that, the appellees in this case don't think that, do they? I ask him that specifically. He said it's not the fact that all the cases are the same sectarian prayer. That's not his argument in this case. His argument is, and I want to ask you about it, so this is about the embodiment and all, that's not, the other side doesn't believe that in this case, do they? They never argue that. And didn't they explicitly deny such a position when I asked them? That was my understanding, yes, Your Honor. Okay, now, their argument is a couple things. First is that somehow the legislative person giving the prayer themselves is coercive. I take it to be that. Or secondly, that these prayers specifically, in this case, there's a record of proselytizing or threats of damnation, and I don't want to state too broadly, but we know what those caveats are. We talked about it from the beginning. And he cited some prayers and said there are more. What do you say in response to that? That has to be something we have to consider. Yes, Your Honor. I think on any fair reading of the record, there is no prayer in our record that is worse, more proselytizing, more denigration than the prayers approved in Town of Greece, and arguably less so. I think arguably, I mean, for example, in Town of Greece, you had an invocation after litigation had been started. But it's the combination, isn't it? It's not legislative prayer by itself, and it's not sectarian prayer by itself. It's the combination of the two that goes on here. Respectfully, Your Honor, I disagree. I think looking at the parts here, there's no, if anything, I would think it would provide comfort because there's no longer any question that sectarian prayer is permitted. There's no longer any question that even if the prayers overwhelmingly reflect one faith tradition, that does not run afoul of the tradition. I don't think, in light of the history presented by Rameke, that there could be any serious question that prayer by legislators somehow falls outside their tradition. So to Your Honor's question about the legislative coercive, we know that it cannot possibly be that that's coercion because of the history of legislators themselves giving prayer. If there are no further questions. We thank you so much. Thank you, Your Honors. We will adjourn court, and we'd like to come down and shake hands with you.
judges: J. Harvie Wilkinson III, Dennis W. Shedd, G. Steven Agee